## Erie Canal Company *versus* Walker.

Where a party is entitled to a water-power supplied by a waste wier from a public canal, he cannot define and limit by his own acts the rights of the canal company to the use of the water, and will be restrained by a perpetual injunction from so doing.

If such party be unnecessarily or illegally deprived of the use of the water to which he is entitled, he must have his rights defined by bill or action before they can be enforced.

IN Equity. Appeal from the Court of Common Pleas of *Crawford county,* by J. and W. Walker.

William Walker was for many years the owner of a tract of land through which Conneaut creek flowed, and on which he had erected a saw-mill before 1830. The state commenced the construction of the canal, and did considerable work upon it; and in 1843 transferred it to the Erie Canal Company, who completed it. In its construction, the waters of the creek were let into it a short distance above the mill; the principal supply, however, is from the reservoir at Conneaut lake, five or six miles south of the mill. A waste wier was made not far from and above Walker's land, through which the water flowed from the canal into the creek, and thence down to appellant's mill, by reason of which, for a number of years immediately following the construction of the canal, during the winter season they did considerable sawing. For various reasons appellees believed it better that the level should be kept up in the canal during the winter season. They made an agreement with Walker to compensate him for the damage to his mill, by giving him a water privilege at lock No. 16, and $500 to pay expenses of removing his mill to the lock. Since the date of this agreement, August 23, 1847, the water has been kept in the canal during the winter season; but Mr. Walker, finding that a sufficient quantity of water would, ordinarily, pass over the waste weir to run his old mill, instead of removing it, leased his privilege at lock No. 16 to one Hallock, and continued to use his own mill where it stood on the creek.

The mills erected at lock No. 16, under Walker's privilege, had run both summer and winter, during the season of navigation, and during its suspension.

The creek and old mill are a few rods west of the canal; the new mill is on the berm bank, and is supplied with water from the canal. Within two miles below this mill there is a grist-mill, saw-mill, and machine shop which are supplied with water from the canal, and for several years a strife has existed between their owners and Walker respecting the water during the winter season. The former contending that it should be kept in the canal so as to

[Erie Canal Company *v.* Walker.]

flow down to their mills, while Walker contended that it was not necessary for the canal in the winter, and if continued therein would render his old mill entirely useless, and thus deprive him of his rights as riparian owner; and that the water should pass through the waste wier into the old channel, and that neither the company nor any one else had a right to keep it closed. After the close of navigation in 1854, and the water was let out of the canal along its line, except at the point in controversy, the defendants requested permission to open the gates, which was refused, and the defendant James opened them himself, and the controversy rests upon his right to do so. The contract between the company and Walker, of August 23, 1847, gives the use of the surplus water at lock 16 to the latter, and he released " all claims of damage to his mill or land, or in any manner whatever, by reason of the construction and maintenance of the Conneaut line of the Pennsylvania Canal."

The canal company claims the exclusive care and control of the canal, at all times, and the right to determine when, and under what circumstances, the waste gates shall be opened or closed, and for the protection of their rights and preventing the destruction of the waste wier, filed their bill for an injunction. Mr. Walker in his answer, claimed a right to open the waste gates, and alleged it was useless and a detriment to the canal and its banks, to allow the water to remain in during the winter season. Testimony was taken on both sides on this question; the proofs show that it was both beneficial and necessary to the preservation of the canal at this place, to keep the waste gates closed during the suspension of navigation.

A preliminary injunction was granted by the court (GALBRAITH, P.), and after testimony was taken and a partial hearing had, was opened, but afterwards in January, 1856, " it was ordered and declared that an injunction be granted to restrain William and James Walker, &c., from opening the gates at the waste wier between locks 15 and 16 and from committing spoil, &c., of said canal and the waste wier, and from letting out the water from the canal into the old channel of the creek or elsewhere, and from injuring the property of the canal, and that the same be made perpetual," &c.

The decreeing the perpetual injunction was the error complained of.

October 19, 1857, the case was submitted on the paper-books.

*Derrickson*, for appellant.—The bill does not aver any necessity for the water in the canal at the *locus in quo* during the seasons of suspended navigation, nor does the evidence establish it. If its continuance there, during those periods, was essential, it should be made so to appear. The release of Walker extended merely to

the damage he incurred in the construction and maintenance of the canal, and when it was not in use, nor the waters of the creek necessary to its existence. All the natural and acquired right as a riparian owner belonged to him, and the company had no right to deprive him of the same, although in so doing, others might be benefited thereby. The natural right of Walker could only be interfered with by state sovereignty, to accomplish a greater public good, and whenever that ceased, for the time being, the other revived. He was entitled to the water when not used for purposes of navigation on the canal, or the preservation thereof, and if it was denied him he had the right to open the gates to let it flow in its natural channel. The granting of an injunction is not of right but of grace, and it will not be granted unless the withholding of it will subject the complainant to irreparable loss or consequences tending thereto. Here, neither could follow from the opening of the gates, as it did not affect navigation, which was suspended, nor the canal itself, or its banks, which the bill says nothing about. The doctrine involved in the case is treated of by Chief Justice Gibson, in The Mayor, &c., of Philadelphia and the Commissioners of Spring Garden, in 6 *Barr* 348, and to which the court is referred: *Brightly's Eq.* 303–4.

*J. W. Farrelly* and *H. L. Richmond*, for appellees.—The bill was sufficient, without an averment of a necessity for the water in the canal during the suspension of navigation. The right to keep and maintain the canal, belonged to the company exclusively by the act of incorporation. Whatever right or justification defendants had to interfere in the control or management of the waste wier, was matter of defence, to be set forth by them in their answer or plea. Defendants denied this necessity in their answer, and testimony was taken on both sides fully, on the point, and it was only after they had failed to establish their allegation, that they discovered the supposed defect in the bill; it is too late now to take advantage of an omission of this kind, if there was one: Bank of Kentucky *v.* Schuylkill Bank, 1 *Par.* 218.

The defendants attempted, at different times, to cut down the waste gates, and threatened repeatedly to use force sufficient to do so:—destruction is an irreparable injury. The consequences of cutting down the waste wier at this place on the canal, might be very disastrous; it is hard to tell what the result might have been.

The company ask protection from lawless violence. It is a proper case for an injunction: Osborn *v.* The Bank of United States, 5 *Wheat.* 769; 2 *Story's Eq.* 231–32.

The opinion of the court was delivered November 25, 1857, by Lowrie, J.—The decree granted in this case was very plainly

[Erie Canal Company *v.* Walker.]

required by the evidence. The defendants claim that during the time that business is suspended on the canal, they have a right to have the water flow in its original channel; but they have not taken the right method of asserting their right, if they have any. The plaintiffs are in possession of the water for the purpose of their canal, and the time during which they need it for the actual business, and the quantity which they need to keep in the canal during the winter season, when business is suspended, are necessarily quite indefinite. It is impossible, therefore, that the defendants can be allowed to define for themselves the plaintiffs' right and interfere with their possession. They insist on opening the weirs and helping themselves according to their own judgment; but this would be a lawless mode of vindicating their rights, and it cannot be allowed. If the defendants have any right to the water beyond what the plaintiffs are willing to concede to them, they must bring their bill or action to have those rights defined before they can be enforced.

Decree affirmed at the costs of the defendants.